# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

PATRICK J.[1],

                              Plaintiff,

    v.                                 5:17-CV-1377 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

KIMBERLY A. SLIMBAUGH, ESQ., for Plaintiff
REBECCA H. ESTELLE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on October 30, 2014, alleging disability beginning April 18, 2013. (Administrative Transcript ("T") at 15, 169-70). His application was denied initially on February 27, 2015. (T. 69-89). Administrative Law Judge ("ALJ") Kenneth Theurer

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

conducted a hearing on January 4, 2017, at which plaintiff and Vocational Expert ("VE") Roxanne Benoit testified. (T. 28-68).

In a decision dated February 7, 2017, the ALJ found that plaintiff was not disabled. (T. 15-23). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on November 15, 2017. (T. 1-6).

## II. **GENERALLY APPLICABLE LAW**

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

B. **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

3

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

As of the date of the January 4, 2017 administrative hearing, plaintiff was 51 years old. (T. 169). He resided with his mother, his adult son and daughter, and his granddaughter. (T. 34-35, 43). Plaintiff graduated high school in regular education classes, and attended several years of college without obtaining a degree. (T. 35-36, 216).

4

After completing military service, plaintiff held a series of jobs, including equipment installer for a telephone company and maintenance manager for a shopping mall. (T. 38-42, 204-211, 241). His most recent employment was as a stock clerk for a large retailer. (T. 38). This work included unloading trucks, moving pallets, and stocking shelves. (*Id.*) He left this position in 2013 after a workplace injury that required neck surgery. (T. 36, 48-49).

Prior to his workplace injury, plaintiff had a lengthy history of back pain that required multiple surgeries and the installation of a dorsal column stimulator.[2] (T. 604, 778). After his neck injury, plaintiff experienced pain that radiated across his shoulders and down into both hands. (T. 778). In April 2013, he had surgery to fuse the C5 and C6 vertebrae. (T. 364-65). After the surgery, plaintiff still experienced pain and numbness in his neck and back, and headaches that were attributed to the neck pain. (T. 48-49). He testified that he had not operated a motor vehicle since the injury, and had difficulty lifting, reaching, and moving his head upwards or from side to side. (T. 48-49).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 17-21). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

---

[2] A dorsal column stimulator is a battery-powered device surgically installed on the spinal cord to control pain by stimulating nerves with tiny electrical impulses. http://www.upstate.edu/anesthesiology/pdf/procedures_stimulator.pdf.

## IV. **THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through December 31, 2018, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 18, 2013. (T. 17). At step two of the sequential evaluation, the ALJ found that plaintiff's back and neck impairments were severe. (T. 17-18). He also found that plaintiff's plaintiff's headaches and obesity did not constitute severe impairments. (T. 18). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 18).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of light work. (T. 18-21). Specifically, plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs. (T. 18). He could rarely reach overhead, but could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) The ALJ also found that plaintiff could only occasionally turn his head from left to right, but could move his head vertically and rotate his torso. (*Id.*) He further found that plaintiff could not perform jobs that required more than occasional fine manipulation, such as repetitive hand-finger actions, fingering, or feeling with his left, non-dominant hand. (*Id.*) Plaintiff retained the ability to grasp, hold, turn, raise, and lower objects with either hand. (*Id.*)

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 96-4p. (*Id*.) Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 18-19.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. (T. 19). The ALJ then determined that plaintiff was unable to perform his past relevant work. (T. 21). Relying on the VE testimony, the ALJ found, at step five, that "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 22). Accordingly, the ALJ determined that plaintiff was not disabled from April 18, 2013 through the date of the ALJ's decision. (T. 23).

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's step two determination was not supported by substantial evidence. (Pl.'s Br. at 19-21) (Dkt. No. 9).

2. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 16-18).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-10) (Dkt. No. 13). For the following

reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI. SEVERE IMPAIRMENT

### A. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10

(W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at

*3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### B. Application

Plaintiff argues that the ALJ erred in determining that plaintiff's headaches were not severe impairments. The ALJ considered plaintiff's headaches at step two, but found that they were not a medically determinable impairment, because the ALJ had not sought any specialized treatment from a neurologist, and had not mentioned them in his DIB application. (T. 18).

This court finds no reversible error with regard to this conclusion. Despite plaintiff's testimony that he experienced headaches since his neck injury, he has not identified any medical records that would have compelled the ALJ to conclude that those headaches impacted plaintiff's ability to perform basic work activities. *See House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 147 (N.D.N.Y. 2012) ("Although the medical record certainly documents treatment with respect to this impairment, no provider identified any impact on Plaintiff's ability to perform basic work activities."). In his brief, plaintiff suggests that his headaches were a cause of memory problems and loss of balance, but does not identify any medical opinion or other evidence that would support that conclusion. There are multiple references in the record to plaintiff's headaches, but none of the treatment notes or medical opinions attribute any specific

functional limitations to them. (T. 327, 333, 370, 604, 776).

In addition, the ALJ did not deny plaintiff's claim at step two, and considered the combined effects of all of plaintiff's impairments in his RFC analysis. (T. 18-19, 21). At step two, he explained that he would consider plaintiff's headaches in connection with plaintiff's neck impairment. (T. 18). He also referenced plaintiff's headaches in the RFC determination. (T. 19, 21). Therefore, the exclusion of plaintiff's headaches from the list of severe impairments at step two did not adversely impact the ALJ's determination at step four or five in the sequential evaluation.

## VII. RFC EVALUATION/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

As noted above, the ALJ found that plaintiff could perform less than the full

range of light work. (T. 18). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly the length of time that he was capable of sitting, standing or walking, and his ability to lift, push, and pull. (Pl.'s Br. at 16-18). This court disagrees, and concludes that the ALJ's assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching the RFC determination, the ALJ gave "great weight" to the opinion of Dr. Kalyani Ganesh, who performed a consultative examination of plaintiff on February 24, 2015. (T. 19, 604-607). Dr. Ganesh opined that plaintiff had no limitations for sitting, standing, or walking. (T. 606). She also opined that plaintiff had moderate limitations with regard to lifting, carrying, pushing, and pulling. (*Id*.)

During the examination, plaintiff demonstrated a normal gait, and needed no assistance changing for the examination, getting on and off the examination table, or rising from a chair. (T. 605). Plaintiff had full flexion and rotation in his cervical spine, but reduced extension of twenty-five degrees. (T. 606). His lumbar spine showed flexion of forty-five degrees, and extension, lateral flexion, and rotation of ten degrees. (*Id*.) He had full range of motion in the elbows, forearms, and wrists bilaterally, intact hand and finger dexterity, and full strength in the upper and lower extremities. (*Id*.)

The ALJ noted that Dr. Ganesh's opinion was consistent with the results of her physical examination of plaintiff. (T. 19-20). It was also supported by diagnostic imaging reports that plaintiff's treating physician, Dr. Warner Wulff, described as "normal," taking into account plaintiff's prior surgeries. (T. 720). It was also consistent with plaintiff's daily activities, which included cooking several times per week,

cleaning daily, doing laundry, shopping, and taking care of chickens and ducks at his family home. (T. 20, 43-44, 604). The ALJ also noted that plaintiff reported that his impairments caused only "mild to moderate" limitations in his activities of daily living in May 2013, shortly after his alleged onset date. (T. 20, 266).

The ALJ gave "partial weight" to several other medical opinions in the record. (T. 20-21). Dr. Charles Reina, Dr. Donald Paarlberg, and Dr. Daniel Carr had each examined plaintiff in the context of his worker's compensation claims. Approximately three months after plaintiff's workplace injury, Dr. Paarlberg issued a June 2011 opinion that plaintiff should not perform any repetitive bending, and should not lift over fifteen pounds. (T. 827). Dr. Carr examined plaintiff on March 23, 2012, and opined that plaintiff could work in a job that did not involve repetitive overhead use of the arms, and did not require lifting more than twenty pounds. (T. 329).

Dr. Reina examined plaintiff in May 2014 and opined that he was capable of "light sedentary" work that did not require pushing, pulling, carrying, or lifting over five pounds above chest level. (T. 360). He also opined that plaintiff could not perform any fine motor or manipulative activity, should have an elevated work station to reduce strain on his neck, and could sit or stand as tolerated. (T. 360). Dr. Reina recommended that plaintiff should return to work for a maximum of four hours per day, and increase as tolerated. (*Id.*) Dr. Reina's examination took place approximately one year after plaintiff's cervical spine surgery, and he estimated that plaintiff would likely reach maximum medical improvement by April 2015. (T. 359).

The ALJ explained his reasons for discounting each of these opinions. He found

14

that the opinions of Dr. Paarlberg and Dr. Carr were largely consistent with the findings of Dr. Ganesh and the RFC determination, but did not reflect all of the postural limitations that were supported by the evidence. (T. 19-20). Therefore, the ALJ's RFC determination was more restrictive in certain areas. The ALJ also noted that Dr. Reina's opinion that plaintiff could not lift over five pounds was inconsistent with physical examinations showing full strength in all extremities. (T. 606, 720). Likewise, Dr. Reina's opinion regarding extreme limitations with fine motor manipulation was inconsistent with other evidence in the record, including nerve conduction studies. (T. 20, 391, 789). The ALJ did not reject this finding completely, but instead limited plaintiff to occasional fine manipulation. (T. 18).

The ALJ also assigned "less weight" to the October 12, 2016 treating physician opinion of Dr. Wulff. (T. 21, 967-970). Dr. Wulff opined that plaintiff could sit for up to two hours at one time, and stand for ten minutes at one time, before needing to change positions. (T. 968). He also opined that plaintiff could sit for less than two hours total, and stand or walk for less than two hours total, during an eight-hour workday. (*Id.*) In his opinion, plaintiff could only occasionally lift over ten pounds, could occasionally twist or stoop, and could never crouch, squat, or climb stairs and ladders. (T. 969). Dr. Wulff further opined that plaintiff would be off task more than twenty-five percent of the time, and would miss work more than four days per month, due to pain from his back and neck impairments and side effects from medication. (T. 21, 968). The opinion is primarily a check-box form, with minimal narrative explaining the basis for Dr. Wulff's findings.

Plaintiff contends that the ALJ should have assigned more weight to this treating source opinion, but the ALJ adequately explained his reasons for discounting Dr. Wulff's findings. *See Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (the court does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). As explained in the decision, the ALJ found that the significant restrictions found by Dr. Wulff were inconsistent with the other medical opinion evidence and the objective medical record, including a nerve conduction study that did not show any abnormalities, and a cervical spine x-ray that Dr. Wulff had described as showing predominantly "normal" results after plaintiff's surgery. (T. 21, 599, 720). The ALJ also contrasted Dr. Wulff's opinion with a May 30, 2015 functional capacity evaluation ("FCE") prepared by plaintiff's physical therapist. While this FCE was more restrictive than the results of Dr. Ganesh's physical examination, it did not rise to the significant restrictions found in Dr. Wulff's opinion. (T. 21, 721-24). The FCE found that plaintiff could "occasionally" lift up to ten pounds, could "frequently" sit, and could "occasionally" stand and walk. His physical therapist concluded that plaintiff could currently perform "sedentary work[3]," but that plaintiff should return to work gradually, "with slowly increasing hours per day," and no overhead reaching or lifting.[4] (T. 722).

---

[3] The FCE's sedentary work classification required the ability to lift up to ten pounds, "constant" sitting, and "occasional" standing or walking. (T. 724). Constant was defined as occurring between 67% - 100% of the day, and occasional was defined as occurring between 3 and 33% of the workday. (T. 724).

[4] Plaintiff contends that the ALJ should have specified the weight assigned to the FCE, even though it was not prepared by an acceptable medical source. This omission does not change the court's analysis. "An ALJ is not required to discuss in depth every piece of evidence

16

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions, or portions thereof, that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).

As described above, the ALJ explained why he concluded that Dr. Ganesh's consultative opinion was supported by the record, as well as the reasons that he assigned it greater weight than the other medical opinions in the record. (T. 19). Therefore, his RFC determination that plaintiff could physically perform less than the full range of light work was supported by substantial evidence. *See Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638 (DNH), 2011 WL 2357665, at *6-7 (N.D.N.Y. May 20,

---

contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue*, No. 10–CV–1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Here, it is clear from the decision that the ALJ reviewed the FCE, and deemed it less reliable than both Dr. Ganesh's opinion and portions of the opinions of Dr. Paarlberg, Dr. Carr, and Dr. Reina. (T. 20-21). Therefore, any error in failing to assign a specific weight to the FCE is harmless.

2011) (consultative examiner's opinion that plaintiff appeared to have moderate limitations with regard to bending, lifting, and prolonged standing and walking was consistent with ALJ's determination that plaintiff could perform most forms of light work); *see also Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *9-10 (S.D.N.Y. Mar. 19, 2018) (ALJ's determination that plaintiff could perform light work was supported by substantial evidence where consultative examiner's opinion of "moderate" limitations was consistent with objective medical findings in the record).

## VIII. STEP FIVE DETERMINATION

### A. Legal Standard

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the

18

plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.

### B. Analysis

Plaintiff did not directly challenge the ALJ's step five determination, so this court will only briefly address this issue. The ALJ asked the VE several hypothetical questions. (T. 56-64). One of these questions mirrored the ALJ's ultimate determination of plaintiff's RFC. (T. 56-59). The VE testified, based on his professional experience, that there were jobs that existed in significant numbers in the national economy that an individual with the same RFC as plaintiff would be able to perform. (T. 59-60). The ALJ relied on this testimony at step five. (T. 22-23). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: February 22, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge